Filed 1/4/23  P. v. Lawson CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILBUR LAWSON,<br><br>    Defendant and Appellant. | B296634<br>(Los Angeles County<br> Super. Ct. No. BA281894)<br><br><br>OPINION FOLLOWING<br>TRANSFER FROM<br>SUPREME COURT |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Reversed and remanded with directions.

Boyce & Schaefer and Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, and Kenneth C. Byrne, Supervising Deputy Attorney General, for Plaintiff and Respondent.

This matter is before us following the Supreme Court's transfer with directions to vacate our prior decision (*People v. Lawson* (Oct. 23, 2020, B296634) [nonpub. opn.] (*Lawson II*)), and reconsider the cause in light of *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*). We vacate our opinion in *Lawson II*. After reconsidering the cause, we again conclude that the court erred by summarily denying defendant's petition for resentencing (former Pen. Code, § 1170.95, now § 1172.6)[1] without appointing him counsel. We also agree with the parties that the error was prejudicial under the Supreme Court's recent decision in *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). We reverse the trial court's order, and remand the matter to the trial court with directions to appoint counsel, receive briefing, and determine if defendant has made a prima facie case for relief.

# FACTUAL BACKGROUND

Our summary of the factual background is based on our prior opinion in defendant's direct appeal (*People v. Williams et al.* (May 20, 2008, B198076) [nonpub. opn.] (*Lawson I*).[2] Defendant and one of his codefendants (Sean Thomas) were tried alongside one another. Their trial was severed from that of another codefendant (Dontae Ray Williams) who was tried first. We summarize only the evidence presented at defendant and Thomas's trial.

---

[1] While the Attorney General's petition for review was pending, Penal Code section 1170.95 was renumbered section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) All further undesignated statutory references are to the Penal Code.

[2] In *Lawson II*, we granted defendant's request to take judicial notice of the prior appellate record in *Lawson I*. (See *Lawson II*, *supra*, at p. 4, fn. 3.) Having vacated that decision, we again grant defendant's request for judicial notice.

At approximately 6:45 p.m. on February 24, 2005, Brandin Brinkley encountered defendant outside a 99¢ Store near Vermont and 61st Street. Defendant asked Brinkley where he could purchase gloves. After Brinkley directed defendant to the 99¢ Store, Brinkley saw him select a pair of black gloves and a pair of red and black gloves inside the store. Brinkley left the store and went home. (*Lawson II*, *supra*, at p. 4.)

Heng Bou testified that he was working in a doughnut store at 60th Street and Vermont on February 24, 2005. Approximately 20 to 30 minutes before he heard sirens and saw an ambulance, Bou saw two young, Black males purchase doughnuts and sit inside the store; the males left before Bou heard sirens. (*Lawson II*, *supra*, at p. 5.)

Guadalupe Rivera testified that around 7:15 p.m. the night of the shooting, she drove to pick up her brother, Osman Alvarado, near a Dollar Warehouse located at Vermont and 60th Street. As she passed by, she saw two men standing outside the store, together with a third man wearing a mask. All three men were wearing hooded sweatshirts. Rivera parked her car and watched the masked man—the shortest of the three men outside the store—follow Alvarado into the Dollar Warehouse.[3] Rivera saw the masked man point a gun inside the store while the other men stood outside, watching him through a glass window. When the two men entered the store, the masked man abruptly left, and Rivera heard gunshots. After the three men ran away, another man emerged from the store holding his back and said he had been shot. (*Lawson II*, *supra*, at p. 5.)

---

[3]   Investigating officers later established that defendant was several inches shorter than Williams and Thomas.

Alvarado testified that when he approached the Dollar Warehouse, he saw three men standing outside. One of the men wore a mask, and the others had hoods over their heads. While inside the store, Alvarado heard the masked man, accompanied by one of the other men, demand money, and a cashier responded, "Okay." When a struggle broke out involving the cashier, one of the men fired a gun, and Alvarado sought cover. After the three men left, Alvarado saw money on the floor near the store entrance. Alvarado never saw the robbers' faces, and he was unsure whether the masked man or the other accomplices held the gun. (*Lawson II*, *supra*, at pp. 5–6.)

Los Angeles Police Department officers responded and discovered the victim (Avila Rodriguez) wounded and lying on the ground. Rodriguez later died of a gunshot wound to his back. Officers found a gun in front of the store, a pair of gloves 200 feet away from the store, and sales tags for gloves in the doughnut shop's trash bin. The gun, which belonged to Rodriguez's friend, was kept in the store for Rodriguez's protection. Thomas's fingerprints were identified on the sales tags, and his DNA matched DNA on one of the recovered gloves. (*Lawson II*, *supra*, at p. 6.)

Investigating officers obtained video surveillance footage from inside of the 99¢ Store and the Dollar Warehouse, which was played for the jury. Video footage of the 99¢ Store showed defendant purchasing two pairs of black gloves and one pair of red gloves. Footage of the Dollar Warehouse showed the shooter wearing red gloves, a hooded sweater, and something covering his face. When Williams was arrested on March 6, 2005, he attempted to discard a firearm. A criminalist could not determine whether the discarded gun had fired the bullet recovered from Rodriguez's body. (*Lawson II*, *supra*, at p. 6.)

4

When defendant and Thomas were interviewed in April 2005, both initially denied being around the area during the robbery and shooting. After Thomas learned that police had recovered his DNA from a recovered glove, he stated that he intended to participate in the robbery, but later changed his mind and stood across the street from the Dollar Warehouse while the robbery occurred. When he heard a gunshot, he ran away. When defendant was shown photographs from video surveillance of the 99¢ Store, he admitted that he had purchased the gloves, but stated that he returned to his grandmother's house a half-mile away from the Dollar Warehouse. Defendant stated that he decided not to participate in the robbery because he did not want to get shot. He denied giving anyone the red gloves, though he could not recall what he had done with them. (*Lawson II*, *supra*, at pp. 6–7.)

## PROCEDURAL BACKGROUND

By amended information on May 30, 2006, defendant was charged alongside Williams and Thomas with murder (§ 187, subd. (a), count 1) and robbery (§ 211, count 2). As to count 1, the information alleged that the murder was committed while defendant was engaged in the commission of robbery (§ 190.2, subd. (a)(17)). As to counts 1 and 2, the information alleged that defendant personally discharged or used a firearm causing death (§ 12022.53, subds. (b)–(d)), and that a principal in the crime was armed with a firearm (former § 12022, subd. (a)(1)).

The matter proceeded to trial. As to count 1, the jury was instructed on first degree felony murder (§ 189, subd. (a)) and the robbery-murder special circumstance (§ 190.2, subd. (a)(17)). During deliberations, the jury asked: "If we cannot unanimously find on any 'special circumstances' question, is it ok to leave the question unanswered?" The court responded that if the jury

5

reached a unanimous decision on a guilty verdict, but could not reach a unanimous decision on the special allegations, the foreperson "should complete the guilty verdict form, answer true or not true as to any special allegation for which you have unanimously agreed, and leave blank any special allegation for which you are unable to agree."

By verdict on January 30, 2007, the jury found defendant guilty of first degree felony murder, and found true the allegation that the murder was committed while defendant was engaged in the commission of robbery (§ 190.2, subd. (a)(17)). It also found true the allegation that a principal in the crime was armed with a firearm (former § 12022, subd. (a)(1)). The jury left blank portions of the verdict form pertaining to the allegations under section 12022.53, subdivisions (b) through (d), and the court declared a mistrial as to those allegations. The verdict form did not specify whether the jury found beyond a reasonable doubt that defendant was the actual killer, intended to kill as an aider and abettor, or acted as a major participant with reckless indifference to human life.

The court sentenced defendant to life imprisonment without the possibility of parole, plus one year for the murder count, and four years for the robbery count, which the court stayed under section 654.

This court affirmed defendant's judgment of conviction in 2008. (*Lawson I*, *supra*, at p. 1.) We concluded that substantial evidence supported defendant's conviction for murder and robbery. (*Id*. at p. 7.) In doing so, we noted that the evidence supported "the reasonable conclusion that Lawson was the masked robber." (*Id*. at p. 17.)

On January 25, 2019, defendant filed a petition for resentencing pursuant to former section 1170.95, now section 1172.6, claiming entitlement to relief because he was convicted of first degree murder under a felony-

6

murder theory or the natural and probable consequences doctrine. Defendant requested that counsel be appointed on his behalf. (*Lawson II*, *supra*, at p. 9.)

In a written memorandum of decision, the trial court summarily denied defendant's petition. The court explained that based on the statement of facts in our prior decision (*Lawson I*), "the identity of the actual shooter was not clearly established at trial." Thus, the court found defendant "may" be entitled to relief of his first degree felony murder conviction. Nevertheless, the court found defendant was ineligible for relief as a matter of law because the jury had found the robbery-murder special circumstance true, which required the jury to find that if defendant was not the actual killer, he had intended to kill the victim or was a major participant who acted with reckless indifference to human life. (*Lawson II*, *supra*, at p. 10.)

In his prior appeal from the court's summary denial of his petition for resentencing, defendant argued that the court erred by relying solely on the robbery-murder special circumstance finding in violation of *People v. Torres* (2020) 46 Cal.App.5th 1168 (*Torres*), review dism. Oct. 12, 2022, S262011. Consistent with the holding in *Torres*, we concluded that the trial court erred by summarily denying defendant's section 1172.6 petition based on the robbery-murder special circumstance finding that predated *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). We reversed the trial court's order, and remanded the matter for the court to determine whether defendant made a prima facie showing that he falls within the provisions of section 1172.6. If the trial court were to find defendant potentially eligible for resentencing, we directed the court to appoint him counsel and order briefing. (*Lawson II*, *supra*, at pp. 3, 12–16, 18.)

7

The Attorney General petitioned for review, and on January 13, 2021, the Supreme Court granted the petition and deferred the matter pending disposition of *Lewis, supra,* 11 Cal.5th 952. On February 9, 2022, the Court issued an order expanding its review in this matter to include the issue then-pending in *Strong, supra,* 13 Cal.5th 698. Following its decisions in *Lewis* and *Strong*, on November 16, 2022, the Court transferred the matter back to this court with directions to vacate the decision and reconsider the cause in light of *Lewis* (the Court did not cite or otherwise reference *Strong* in its transfer order to this court).

## DISCUSSION

1. *Amendment of the Felony Murder Rule*

On January 1, 2019, California's felony murder rule and the natural and probable consequences doctrine were altered by Senate Bill No. 1437 (S.B. 1437). S.B. 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished this purpose by amending section 188, defining malice, and section 189, defining the degrees of murder.

In amending section 188, S.B. 1437 added the following provision: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) S.B. 1437 also added the following as subdivision (e) of section 189: "A participant in the

8

perpetration or attempted perpetration of a felony listed in subdivision (a)[4] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); Stats. 2018, ch. 1015, § 3.)

2. *Petitions Under Section 1172.6*

In addition to amending the felony murder rule and the natural and probable consequences doctrine, S.B. 1437 also added former section 1170.95, now section 1172.6. (Stats. 2018, ch. 1015, § 4.)[5] Section 1172.6 allows a person convicted of felony murder, or murder under the natural and probable consequences doctrine, to "file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder [or] murder under the natural and probable consequences doctrine . . . . [¶] (2) The petitioner was convicted of murder, . . . following a

---

4       Robbery is one of the felonies listed in section 189, subdivision (a).

5       Prior to being renumbered section 1172.6, former section 1170.95 was amended to expand the petitioning procedure to individuals convicted of theories not relevant here, and to codify the holding of *Lewis*, *supra*, 11 Cal.5th 952 regarding a petitioner's right to counsel and the standard for determining the existence of a prima facie case. (Stats. 2021, ch. 551, §§ 1, 2.)

9

trial . . . . [¶] [and] (3) The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

Subdivision (b)(1) of that statute requires that the petition be filed with the court that sentenced the petitioner, and must include (a) a declaration by the petitioner that he or she is eligible for relief under the section; (b) the superior court case number and year of conviction; and (c) whether the petitioner requests appointment of counsel. Subdivision (b)(2) provides that the trial court may deny the petition without prejudice if any of the information required by subdivision (b)(1) is missing and cannot be readily ascertained by the court.

Following the Court's decision in *Lewis*, the Legislature amended section 1172.6 to codify a portion of that decision in subdivision (b)(3), which now provides: "Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." After providing the prosecution and petitioner additional time to submit briefings, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

The remainder of the statute sets forth the procedure for responding to, and the hearing on, the order to show cause, as well as post-hearing matters.

10

3. *Analysis*

Following the Supreme Court's transfer in this case, defendant filed a supplemental brief. In it, he argues that under *Lewis*, we must again reverse the order summarily denying his petition for resentencing, and remand the matter with directions to appoint counsel and receive briefing. In his supplemental brief, the Attorney General agrees with defendant's contention, and further concedes that the error is not harmless, "because [the] sole basis for denying the petition thus far were the arguments presented to and rejected by the high court in *Strong*." We agree with the parties.

The trial court committed error by summarily denying defendant's petition for resentencing without appointing him counsel and receiving briefing. In *Lewis*, the Supreme Court held that once a petitioner files a facially sufficient petition under section 1172.6 and requests appointment of counsel, the superior court must appoint counsel before conducting any prima facie review. (See *Lewis*, *supra*, 11 Cal.5th at p. 963 ["petitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition"]; accord, § 1172.6, subd. (b)(3).)

The trial court's error was prejudicial. The Court in *Lewis* further held that a superior court's failure to appoint counsel to represent a petitioner when assessing whether he or she has made a prima facie showing of entitlement to relief is state law error only, reviewable for prejudice under *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, *supra*, at pp. 957, 973–974.) "More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing.""" (*Id.* at p. 974, quoting *People v. Daniel* (2020) 57 Cal.App.5th 666, 676.)

11

As the Attorney General concedes, defendant has made the requisite showing of prejudice under *Lewis*, because his record of conviction does not contain facts refuting the allegations made in his petition as a matter of law. (See *Lewis*, *supra*, 11 Cal.5th at p. 971; *People v. Harden* (2022) 81 Cal.App.5th 45, 52 ["the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*"].)

As amended by S.B. 1437, subdivision (e) of section 189 provides that participation in the perpetration or attempted perpetration of an enumerated felony (here, robbery) in which a death occurs renders a person liable for murder "only if one of the following is proven: . . . [¶] . . . [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted . . . or assisted the actual killer in the commission of murder in the first degree [or] [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Section 190.2, subdivision (d), in turn, provides that "every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets . . . or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be [subject to capital punishment] if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true." Robbery is a felony listed in section 190.2, subdivision (a)(17).

The special circumstance finding in this case indicates that the jury found that defendant was the actual killer, *or* "with the intent to kill[,] aided, abetted, or assisted any actor in the commission of the murder in the first degree, *or* with reckless indifference to human life and as a major participant,

12

aided, abetted, or assisted in the commission of the crime of robbery, which resulted in the death of a human being." (Italics added.)

As we discussed in *Lawson II*, because these findings were made in 2007 long before the decisions in *Banks* and *Clark*, they do not preclude defendant from showing that he could not be convicted of first degree murder under current law. (*Lawson II*, *supra*, at pp. 13–14, citing *Torres*, *supra*, 46 Cal.App.5th at p. 1179.) This reasoning was recently affirmed in *Strong*. In that case, the Court held that "[f]indings issued by a jury before *Banks* and *Clark* [(which significantly changed the prevailing understanding of major participation and reckless indifference)] do not preclude a defendant from making out a prima facie case for relief under [§ 1172.6]. This is true even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*." (*Strong*, *supra*, 13 Cal.5th at p. 710; accord, *id.* at p. 721 [major participation-reckless indifference findings "will not defeat an otherwise valid prima facie case" unless those findings were made after *Banks* and *Clark* were decided].)

Thus, because the record of defendant's conviction does not demonstrate that he is not eligible for resentencing as a matter of law, we cannot conclude that it is not reasonably probable that appointment of counsel could change the trial court's decision at the prima facie stage of review.

//

//

//

//

//

//

13

**DISPOSITION**

The order summarily denying defendant's petition for resentencing under section 1172.6 is reversed, and the matter is remanded for the trial court to appoint counsel, order briefing, and proceed consistent with section 1172.6, subdivisions (b)(3) and (c).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:



COLLINS, J.



CURREY, J.


14